1   E. MARTIN ESTRADA
    United States Attorney
2   MACK E. JENKINS
    Assistant United States Attorney
3   Chief, Criminal Division
    KERRY L. QUINN (Cal. Bar No. 302954)
4   Assistant United States Attorney
    Major Frauds Section
5        1100 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-5423
7        Facsimile: (213) 894-6269
         E-mail:   Kerry.L.Quinn@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,        No. CR 21-580-MWF

13              Plaintiff,            PLEA AGREEMENT FOR DEFENDANT
                                      ABDUL-MALIK MCCLAIN
14              v.

15   ABDUL-MALIK MCCLAIN,

16              Defendant.

17

18        1.   This constitutes the plea agreement between ABDUL-MALIK

19   MCCLAIN ("defendant") and the United States Attorney's Office for the

20   Central District of California (the "USAO") in the above-captioned

21   case.  This agreement is limited to the USAO and cannot bind any

22   other federal, state, local, or foreign prosecuting, enforcement,

23   administrative, or regulatory authorities.

24                      DEFENDANT'S OBLIGATIONS

25        2.   Defendant agrees to:

26        a.   At the earliest opportunity requested by the USAO and

27   provided by the Court, appear and plead guilty to count one of the

28   indictment in United States v. ABDUL-MALIK MCCLAIN, CR No. 21-580-

MWF, which charges defendant with mail fraud in violation of 18 U.S.C. § 1341.

       b.    Not contest facts agreed to in this agreement.

       c.    Abide by all agreements regarding sentencing contained in this agreement.

       d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

       e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

       f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

       g.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

       h.    Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

       i.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

1    Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

2    Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

3    criminal debt shall be assessed based on the completed Financial

4    Disclosure Statement and all required supporting documents, as well

5    as other relevant information relating to ability to pay.

6         j.   Authorize the USAO to obtain a credit report upon

7    returning a signed copy of this plea agreement.

8         k.   Consent to the USAO inspecting and copying all of

9    defendant's financial documents and financial information held by the

10   United States Probation and Pretrial Services Office.

11                    THE USAO'S OBLIGATIONS

12   3.   The USAO agrees to:

13        a.   Not contest facts agreed to in this agreement.

14        b.   Abide by all agreements regarding sentencing contained

15   in this agreement.

16        c.   At the time of sentencing, move to dismiss the

17   remaining counts of the indictment as against defendant.  Defendant

18   agrees, however, that at the time of sentencing the Court may

19   consider any dismissed charges in determining the applicable

20   Sentencing Guidelines range, the propriety and extent of any

21   departure from that range, and the sentence to be imposed.

22        d.   At the time of sentencing, provided that defendant

23   demonstrates an acceptance of responsibility for the offense up to

24   and including the time of sentencing, recommend a two-level reduction

25   in the applicable Sentencing Guidelines offense level, pursuant to

26   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

27   additional one-level reduction if available under that section.

28

## NATURE OF THE OFFENSE

4.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, the following must be true:

First, the defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

## PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1341, is: 20 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts

4

greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is at least $283,063, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case

may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case, suspension or revocation of a professional license, and the loss of scholarships or other educational benefits.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

## FACTUAL BASIS

10.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in Exhibit A, which is incorporated herein by reference, and defendant and the USAO

further agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

11. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

12. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(2)] |
| Specific Offense Characteristics | | |
| Loss greater than $550,000 and less than or equal to $1,500,000 | +14 | [U.S.S.G. § 2B1.1(b)(1)(H)] |
| Use of means of ID to obtain means of ID | +2 | [U.S.S.G. § 2B1.1(b)(11)(C)(i)] |

Adjustments

Leader/organizer                    +4          [U.S.S.G. § 3B1.1(a)]

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

      c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

      d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.   The right to confront and cross-examine witnesses against defendant.

1    f.    The right to testify and to present evidence in
2  opposition to the charges, including the right to compel the
3  attendance of witnesses to testify.

4    g.    The right not to be compelled to testify, and, if
5  defendant chose not to testify or present evidence, to have that
6  choice not be used against defendant.

7    h.    Any and all rights to pursue any affirmative defenses,
8  Fourth Amendment or Fifth Amendment claims, and other pretrial
9  motions that have been filed or could be filed.

10                WAIVER OF APPEAL OF CONVICTION
11    16.    Defendant understands that, with the exception of an appeal
12  based on a claim that defendant's guilty plea was involuntary, by
13  pleading guilty defendant is waiving and giving up any right to
14  appeal defendant's conviction on the offense to which defendant is
15  pleading guilty.  Defendant understands that this waiver includes,
16  but is not limited to, arguments that the statute to which defendant
17  is pleading guilty is unconstitutional, and any and all claims that
18  the statement of facts provided herein is insufficient to support
19  defendant's plea of guilty.

20            LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE
21    17.    Defendant agrees that, provided the Court imposes a total
22  term of imprisonment on all counts of conviction of no more than 63
23  months, defendant gives up the right to appeal all of the following:
24  (a) the procedures and calculations used to determine and impose any
25  portion of the sentence; (b) the term of imprisonment imposed by the
26  Court; (c) the fine imposed by the Court, provided it is within the
27  statutory maximum; (d) to the extent permitted by law, the
28  constitutionality or legality of defendant's sentence, provided it is

within the statutory maximum; (e) the amount and terms of any
restitution order, provided it requires payment of no more than
$283,063; (f) the term of probation or supervised release imposed by
the Court, provided it is within the statutory maximum; and (g) any
of the following conditions of probation or supervised release
imposed the Court: the conditions set forth in Second Amended General
Order 20-04 of this Court.

18.   The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a term of imprisonment of no less than 51
months, the USAO gives up its right to appeal any portion of the
sentence, with the exception that the USAO reserves the right to
appeal the amount of restitution ordered if it is less than $283,063.

<u>WAIVER OF COLLATERAL ATTACK</u>

19.   Defendant also gives up any right to bring a post-
conviction collateral attack on the conviction or sentence, including
any order of restitution, except a post-conviction collateral attack
based on a claim of ineffective assistance of counsel, a claim of
newly discovered evidence, or an explicitly retroactive change in the
applicable Sentencing Guidelines, sentencing statutes, or statutes of
conviction.   Defendant understands that this waiver includes, but is
not limited to, arguments that the statute to which defendant is
pleading guilty is unconstitutional, and any and all claims that the
statement of facts provided herein is insufficient to support
defendant's plea of guilty.

20.   This agreement does not affect in any way the right of the
USAO to appeal the sentence imposed by the Court.

10

1

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

2      21.   Defendant agrees that if the count of conviction is
3   vacated, reversed, or set aside, both the USAO and defendant will be
4   released from all their obligations under this agreement.

5

## RESULT OF WITHDRAWAL OF GUILTY PLEA

6      22.   Defendant agrees that if, after entering a guilty plea
7   pursuant to this agreement, defendant seeks to withdraw and succeeds
8   in withdrawing defendant's guilty plea on any basis other than a
9   claim and finding that entry into this plea agreement was
10   involuntary, then (a) the USAO will be relieved of all of its
11   obligations under this agreement; and (b) should the USAO choose to
12   pursue any charge that was either dismissed or not filed as a result
13   of this agreement, then (i) any applicable statute of limitations
14   will be tolled between the date of defendant's signing of this
15   agreement and the filing commencing any such action; and
16   (ii) defendant waives and gives up all defenses based on the statute
17   of limitations, any claim of pre-indictment delay, or any speedy
18   trial claim with respect to any such action, except to the extent
19   that such defenses existed as of the date of defendant's signing this
20   agreement.

21

## EFFECTIVE DATE OF AGREEMENT

22      23.   This agreement is effective upon signature and execution of
23   all required certifications by defendant, defendant's counsel, and an
24   Assistant United States Attorney.

25

## BREACH OF AGREEMENT

26      24.   Defendant agrees that if defendant, at any time after the
27   effective date of this agreement, knowingly violates or fails to
28   perform any of defendant's obligations under this agreement ("a

breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

25.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under

the United States Constitution, any statute, Rule 410 of the Federal
Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
Procedure, or any other federal rule, that the statements or any
evidence derived from the statements should be suppressed or are
inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
## OFFICE NOT PARTIES

26.    Defendant understands that the Court and the United States
Probation and Pretrial Services Office are not parties to this
agreement and need not accept any of the USAO's sentencing
recommendations or the parties' agreements to facts or sentencing
factors.

27.    Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error.  While this paragraph permits both
the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

28.    Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions

1  different from those agreed to, and/or imposes any sentence up to the
2  maximum established by statute, defendant cannot, for that reason,
3  withdraw defendant's guilty plea, and defendant will remain bound to
4  fulfill all defendant's obligations under this agreement.  Defendant
5  understands that no one -- not the prosecutor, defendant's attorney,
6  or the Court -- can make a binding prediction or promise regarding
7  the sentence defendant will receive, except that it will be within
8  the statutory maximum.

9                          NO ADDITIONAL AGREEMENTS

10       29.   Defendant understands that, except as set forth herein,
11  there are no promises, understandings, or agreements between the USAO
12  and defendant or defendant's attorney, and that no additional
13  promise, understanding, or agreement may be entered into unless in a
14  writing signed by all parties or on the record in court.
15  //
16  //
17  //
18  //
19  //
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

1        PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        30.   The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   E. MARTIN ESTRADA
    United States Attorney

9

10  _Kerry Quinn /SSL_____        _6/4/2024_____
    KERRY L. QUINN                   Date
11  Assistant United States Attorney

12  _____          _06-04-2024_____
    ABDUL-MALIK MCCLAIN              Date
13  Defendant

14  _____          _6/4/2024_____
    JUSTIN PALMER, ESQ.             Date
15  Attorney for Defendant
    ABDUL-MALIK MCCLAIN
16

17

18              CERTIFICATION OF DEFENDANT

19       I have read this agreement in its entirety.  I have had enough

20  time to review and consider this agreement, and I have carefully and

21  thoroughly discussed every part of it with my attorney.  I understand

22  the terms of this agreement, and I voluntarily agree to those terms.

23  I have discussed the evidence with my attorney, and my attorney has

24  advised me of my rights, of possible pretrial motions that might be

25  filed, of possible defenses that might be asserted either prior to or

26  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

27  of relevant Sentencing Guidelines provisions, and of the consequences

28  of entering into this agreement.  No promises, inducements, or

                              15

representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charge and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____     06-04-2024
ABDUL-MALIK MCCLAIN                    Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am ABDUL-MALIK MCCLAIN's attorney.  I have carefully and
thoroughly discussed every part of this agreement with my client.
Further, I have fully advised my client of his rights, of possible
pretrial motions that might be filed, of possible defenses that might
be asserted either prior to or at trial, of the sentencing factors
set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this
agreement is an informed and voluntary one; and the factual basis set
forth in this agreement is sufficient to support my client's entry of
a guilty plea pursuant to this agreement.

_____     6-4-2024
JUSTIN PALMER, ESQ.                    Date
Attorney for Defendant
ABDUL-MALIK MCCLAIN

16

**EXHIBIT A**

**EXHIBIT A TO PLEA AGREEMENT FOR DEFENDANT ABDUL-MALIK MCCLAIN**

**STATEMENT OF FACTS SUPPORTING PLEA AGREEMENT**

**A.    BACKGROUND FACTS**

At all relevant times:

1.    Defendant was a resident of Los Angeles, a student at University 1, and a member of University 1's football team.

2.    The Employment Development Department ("EDD") for the State of California was the administrator of the unemployment insurance ("UI") benefit program in California.

3.    On March 17, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

4.    Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

5.    The CARES Act established a new program -- Pandemic Unemployment Assistance ("PUA") -- to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular unemployment insurance benefits, including business owners, self-employed workers, independent contractors, and those with a limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic.  UI

benefits provided under the PUA program are sometimes referred to as PUA benefits.

6.    Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

7.    Persons applying for PUA benefits between April 2020 and November 2020 did not need to submit any supporting documents to EDD with their applications.  Claimants entered their total income for the 2019 calendar year on the application.  The stated income was used to pay the minimum benefits of $167 per week.  EDD could request documentation to provide proof of the stated income.

8.    A PUA claimant was required to answer various questions to establish his/her eligibility for PUA benefits.  The claimant was required to provide his/her name, Social Security Number, and mailing address.  The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

9.    After EDD accepted a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Bill Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses.  The EBP card was mailed via the United States Postal Service to the claimant at the address the claimant provided in his/her UI application.

1  **B.    THE SCHEME TO DEFRAUD**

2      10.    From July 2020 to September 2020, defendant knowingly and

3  with the intent to defraud participated in a scheme to defraud EDD

4  and the United States Treasury as to material matters.

5      11.    The fraudulent scheme operated, in substance, as follows:

6          a.    Defendant filed and caused the filing of fraudulent

7  applications for PUA benefits, falsely representing that the

8  claimants named in the applications (the "named claimants") had

9  worked in California, had lost work in California because of the

10  COVID-19 pandemic, and were actively seeking work in California.   In

11  fact, as defendant then knew, the named claimants had not worked in

12  California, at least not to the extent claimed in the applications,

13  and the named claimants had not lost work in California because of

14  the COVID-19 pandemic, nor were they seeking work in California.

15          b.    By falsely stating that the named claimants had worked

16  in California, had lost work in California as a result of the COVID-

17  19 pandemic, and were actively seeking work but unable to find work

18  in California, defendant falsely represented, and caused to be

19  falsely represented, that the named claimants were eligible for UI

20  benefits administered by EDD when, as defendant then knew, they were

21  not eligible for such benefits.

22          c.    For many of the applications defendant filed or

23  assisted in filing, defendant listed addresses to which he had access

24  as the mailing addresses, so that he was the one who received the EBP

25  card for the named claimants for approved claims.   For other

26  applications, the addresses were associated with the named claimants,

27  and the named claimants received the EBP cards.

28

1         d.    As a result of the fraudulent UI benefits applications

2   that defendant filed and caused to be filed, EDD authorized BofA to

3   issue EBP debit cards in the names of the named claimants and to mail

4   the EBP debit cards to the addresses listed on the applications.

5         e.    As stated above, for many of the applications,

6   defendant had listed an address he controlled, and for approved

7   claims, he received the EBP debit cards and used them to withdraw UI

8   benefits by making cash withdrawals and to pay for purchases of goods

9   and services.  Defendant also transferred and caused the transfer of

10  funds from accounts associated with the EBT debit cards to accounts

11  he controlled, and in other instances, defendant received payment

12  from the person who received the EBP card.

13  **C.   USE OF THE MAILS**

14      12.  Among the EBP debit cards that defendant caused to be

15  mailed in the course of the scheme was an EBP debit card for an

16  account in the name of M.S. ending in x1672 sent by U.S. Mail on or

17  about July 29, 2020, from BofA to an address on Jefferson Boulevard

18  in Los Angeles, California.

19  **D.   VICTIM IMPACT & OTHER SENTENCING FACTORS**

20      13.  In total, defendant and his co-schemers fraudulently sought

21  more than $1,056,092 in UI benefits from EDD, receiving approximately

22  $283,063 from the fraudulent claims, and causing EDD to lose the same

23  approximate amount.

24      14.  Defendant submits and agrees that in the course of the

25  fraud he used claimants' names and social security numbers, which are

26  means of identification, to obtain an EBP debit card, with an

27  associated number, which is also a means of identification, and in

28

this way, he used a means of identification to obtain another means of identification.

15. Defendant also submits and agrees he was a leader or organizer of the EDD fraud scheme insofar as he recruited others into it, directed them in what they should submit, and otherwise organized and assisted others in obtaining fraudulent UI benefits.

\*     \*     \*

CERTIFICATION OF DEFENDANT

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT ("statement of facts") in its entirety. I have had enough time to review and consider this statement of facts, and I have carefully and thoroughly discussed every part of it with my attorney. I agree that this statement of facts is accurate and correct, and is sufficient to support plea of guilty to the charge described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 of the plea agreement.

_____          06-04-2024
ABDUL-MALIK MCCLAIN                        Date
Defendant

1    CERTIFICATION OF DEFENDANT'S ATTORNEY

2        I am ABDUL MALIK MCCLAIN's attorney.  I have carefully and

3    thoroughly discussed every part of this statement of facts with my

4    client and agree that it is sufficient to support plea of guilty to

5    the charge described in the plea agreement and to establish the

6    Sentencing Guidelines factors set forth in paragraph 12 of the plea

7    agreement.

8                                              6-4-2024

9    JUSTIN PALMER, ESQ.              Date
     Attorney for Defendant
10   ABDUL-MALIK MCCLAIN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    6